```
       IN THE UNITED STATES DISTRICT COURT FOR THE
                EASTERN DISTRICT OF OKLAHOMA
```

SHERRI B. MEADE,                  )
                                  )
         Plaintiff,               )
                                  )
v.                                ) Case No. CIV-13-454-JHP-KEW
                                  )
CAROLYN W. COLVIN, Acting         )
Commissioner of Social            )
Security Administration,          )
                                  )
         Defendant.               )

## REPORT AND RECOMMENDATION

Plaintiff Sherri B. Meade (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on January 13, 1961 and was 47 years old at the time of the ALJ's decision. Claimant obtained her GED, vo-tech training as an EMT, and some college classes. Claimant has worked in the past as an EMT, receptionist, paint mixer at Lowe's, unit

secretary, and radio DJ. Claimant alleges an inability to work beginning October 31, 2004 due to limitations resulting from bipolar disorder, depression, anxiety, mood disorder, hallucinations, and concentration problems.

**Procedural History**

On February 6, 2006, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. An administrative hearing was conducted by Administrative Law Judge Michael Kirkpatrick ("ALJ") on September 3, 2008 in Paris, Texas. The ALJ issued an unfavorable decision on October 22, 2008. On November 30, 2010, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

By Opinion and Order entered September 26, 2012, this Court reversed the ALJ's decision and remanded the case for further proceedings. (Tr. 503-14). On June 27, 2013, an additional administrative hearing was conducted by ALJ James Bentley. On July 10, 2013, the ALJ entered an unfavorable decision which became

final for appellate purposes.  20 C.F.R. §§ 404.984, 416.1484.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform light work with restrictions.

## Error Alleged for Review

Claimant asserts the ALJ committed error in failing to properly evaluate the opinions of Claimant's treating physician and counselor.

## Consideration of Opinion Evidence

In his decision, the ALJ determined Claimant suffered from the severe impairments of lumbar degenerative disc disease, mood disorder, depression, bipolar disorder, and anxiety. (Tr. 415). He concluded that Claimant retained the RFC to perform light work except that she was limited to simple, repetitive, and routine tasks with routine supervision. Claimant could tolerate occasional contact with co-workers and supervisors, but could have no work-related contact with the general public. (Tr. 417). After consultation with a vocational expert, the ALJ determined Claimant could perform the representative jobs of deli cutter/slicer, housekeeping cleaner, and merchandise marker, all of which the

5

vocational expert testified existed in sufficient numbers in the regional and national economies. (Tr. 430). Based upon these findings, the ALJ concluded Claimant was not disabled from October 31, 2004 through the date of the decision. Id.

Claimant contends the ALJ failed to properly evaluate the opinion of Dr. Rao Surredi. On April 10, 2006, Dr. Surredi prepared a Mental Status Form on Claimant. He found Claimant was unable to focus, unable to cope or handle any stress, could carry out simple things only, was forgetful, could not cope with time pressure, and was unable to mingle with people. (Tr. 273). The ALJ gave Dr. Surredi's opinion "little weight" because he is a general practitioner to whom Claimant was referred by a friend. The ALJ also found Dr. Surredi treated Claimant several times and advised that Claimant see a neurologist or psychiatrist for a second opinion, Dr. Surredi's treatment notes contain no abnormal mental status examination findings or any indication Claimant reported symptoms in the nature found by Dr. Surredi. Claimant was also establishing care at MHSSO at the time Dr. Surredi completed his Mental Status Form where it was noted Claimant had problems with treatment compliance six months later. The ALJ also found Dr. Turnock's consultative examination in April of 2006 contradicted Dr. Surredi's opinion that Claimant was unable to focus. (Tr.

6

424).

The ALJ is required to give a treating physician's opinion controlling weight, unless circumstances justify giving it a lesser weight. In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is

7

supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted).

Dr. Surredi was not a mental health specialist. How Claimant came to be treated by him - whether through a friend or other referral - has no relevancy to the overall weight given to his opinion. The record indicates Claimant was attended by Dr. Surredi at least eight times over a 10 month period from June of 2005 until April of 2006. (Tr. 274-77, 279-80). Dr. Surredi's treatment records indicated Claimant suffered from anxiety, nervousness, and

8

depression. (Tr. 274-75). He noted Claimant was tearful and felt bad. (Tr. 280). Claimant's alleged lack of treatment compliance noted by the ALJ as a basis to reject Dr. Surredi's opinion was resolved in April of 2007 according to the medical record and her depressed mental condition continued to be noted in the treatment records as causing her problems. (Tr. 346-47, 353-57, 361-69, 374, 388, 647-52, 668-72).

Additionally, Dr. Patrick Turnock conducted a mental status exam of Claimant on April 29, 2006. Dr. Turnock found Claimant's long term memory was mildly impaired, short term memory was moderately impaired, and concentration was mildly impaired. (Tr. 289-90). He concluded that Claimant had been experiencing depression for may years and had become worse in the past year or so. He found "[h]er depression does appear to be debilitating at this time." (Tr. 291). Contrary to the ALJ's findings, Dr. Turnock did not specifically find Claimant's focus was unimpaired. Indeed, she appears to have shown considerable inability to focus during Dr. Turnock's questioning. Other opinion evidence in the record would appear to also support Dr. Surredi's position on Claimant's mental impairments, albeit the opinion was also rejected by the ALJ. (Tr. 404-08). Based upon the evidence presented, this Court finds the ALJ failed to satisfy the Watkins analysis concerning Dr.

Surredi's opinions. The bases he provided were not adequate to completely disregard Dr. Surredi's status as a treating physician. On remand, the ALJ shall re-evaluate Dr. Surredi's opinion, obtain such other consultative opinions as necessary, and reassess the effect Dr. Surredi's opinion might have upon his RFC determination.

The ALJ also rejected the opinion of Ms. Tammie Wavada, a counselor. Ms. Wavada found Claimant "markedly" limited in eleven different functional areas and "moderately" limited in an additional nine areas. (Tr. 404-08). In her narrative statement, Ms. Wavada found Claimant was very depressed with flat affect, suicidal thoughts, no desire to do anything, mentally numb, no energy, racing thoughts, impaired memory, impaired concentration, and ineffective treatment for her condition. (Tr. 408).

The ALJ gave Ms. Wavada's opinion "little weight" because (1) it was in conflict with the findings of Dr. Charles Dukes; (2) Claimant only saw Ms. Wavada a couple of times; and (3) the form completed by Ms. Wavada was signed after Claimant's hospitalization which found no abnormal behaviors. (Tr. 425). Dr. Dukes' notes from February of 2008 are not in as complete conflict with Ms. Wavada's opinion as represented by the ALJ. Dr. Dukes found Claimant was depressed with fair judgment, insight, and impulse control. However, he also noted Claimant was experiencing auditory

and visual hallucinations, noting she heard voices and had anxiety during the day. (Tr. 361). Dr. Dukes came to these conclusions after a 15 minute session with Claimant. Id. It is somewhat disingenuous for the ALJ to criticize Ms. Wavada for only having seen Claimant on two occasions while wholly adopting the opinion of Dr. Dukes who saw Claimant for 15 minutes. This Court finds the ALJ to adequately consider Ms. Wavada's opinion and the assignment of "little weight" was unsupported by his review. On remand, the ALJ shall reassess Ms. Wavada's opinion evidence and make such adjustments to his RFC findings as necessitated by his reconsideration.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.

The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen

(14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 12th day of March, 2015.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE